UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Matthew W. Peters

   v.                                                          Civil No. 15-cv-025-LM

James Azzara

## REPORT AND RECOMMENDATION

Plaintiff, Matthew Peters, who appears pro se, is incarcerated in the New Hampshire State Prison ("NHSP"). Peters seek relief under 42 U.S.C. § 1983 based upon claims that defendant, James Azzara, an investigator employed by the New Hampshire Department of Corrections ("DOC"), violated Peters's Eighth Amendment rights by acting with deliberate indifference to Peters's safety. Before this magistrate judge for a report and recommendation is defendant's motion for summary judgment (Doc. No. 85).

## Summary Judgment Standard

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Walker v. President & Fellows of Harv. Coll., 840 F.3d 57, 61 (1st Cir. 2016) (citations omitted). "An issue is genuine if it can be

resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (citations and internal quotation marks omitted). When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor." Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 29 (1st Cir. 2016). To defeat summary judgment, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe.'" Xiaoyan Tang, 821 F.3d at 215 (citation omitted).

**Background[1]**

Peters has described himself as a former high-ranking member of a prison gang known as the Brotherhood of White Warriors ("BOWW"). See Dep. Matthew Peters ("Peters Dep."), at 30 (Doc. No. 85-5, at 8); Mem. Law in Support Mot. Summ. J. ("S.J. Mem."), at 2 (Doc. No. 85-1). In early February 2015,

---

[1] Unless otherwise indicated, the facts recited in this section are undisputed.

2

Peters sent an Inmate Request Slip ("IRS") to the NHSP's office of investigations. In it, he stated the following:

> I am writing to you to formally denounce my membership [in] BOWW, a security threat group ["STG"]. I was labeled and sentenced as such. I have since come to realize that that road will lead me nowhere in life. I have also cleaned up and taken every course available to me to better my life and be a better man. My urin[e] history and school admittance records will show this. According to House Bill 649 and [NHSP Policy and Procedure Directive] 5.11 a member [of an STG] in order to not be labeled an STG member must write to you guys and formally denounce their gang. I am doing that now as I am interested in good behavior and earning good time for myself. What I will not do is "debrief" or "rat" as I don't believe in it and it could put my life in harm to carry such a label. Please write me back and let me know if I'm no longer (STG) as my actions will show that I'm not.

DOC IRS, Feb. 1, 2015 (Doc. No. 93-3). Investigator Marc Marchand gave the following response: "Noted. Someone will be over to interview you about your knowledge of BOWW." Id.; S.J. Mem., at 2 (Doc. No. 85-1).

Peters's IRS resulted in an interaction with Azzara in the rotunda of the NHSP Secure Housing Unit ("SHU"). Azzara and Peters have provided different descriptions of that interaction, the principal difference being that Peters, but not Azzara, reports that Azzara mentioned Peters's desire to leave BOWW when he spoke with Peters at that time. Compare Aff. Matthew Peters (Jan. 24, 2017) ("Peters Aff.") ¶ 3 (Doc. No. 93-26), with Aff.

3

James Azzara (Dec. 19, 2016) ("Azzara Aff.") ¶ 6 (Doc. No. 85-7). For purposes of resolving defendant's motion for summary judgment, the court bases its legal analysis on plaintiff's description. According to Peters:

> Sometime in the month of April 2015 I was on my way from my cell out to the cages when me and the escorting officer were stopped by investigator James Azzara. Mr. Azzara walked up, and started, as he put it, "a casual conversation" in front of other max security inmates who were also labeled (STG). He stated that he had received my request slip and wanted to know if it was true that I wanted to leave [BOWW.] I stated "ya it is" he then stated that "he would have [already] come to see me but he was busy with [a lot] of criminal investigations. He told me to be of good behavior and that he would be down to de-brief me soon." The conversation made me very uncomfortable. I even told him that he needed to be more discrete [sic] next time.

Peters Aff. ¶ 3 (Doc. No. 93-26).[2] Peters states that he has "had to answer countless interrogations by angry convicts on why [he] would de-brief or cooperate with authorit[ie]s," and that "they all believed that [he] was trying to sell other convicts down the river." Id. ¶ 10 (Doc. No. 93-26),

On June 14, 2015, Peters wrote an IRS complaining about how Peters had been ostracized and called a "rat" since Azzara spoke

---

[2]Plaintiff's surreply provides a correction regarding the date when the SHU Rotunda incident occurred. The surreply states that the incident may have occurred in June 2015. See Surreply (Doc. No. 95) at 4 n.1.

4

with him in SHU.  Pl.'s Obj. Summ. J. (Doc. No. 93), at 2; see also S.J. Mem., at 2 (Doc. No. 85-1).  Peters was told he could use the NHSP protective custody ("P.C.") process to address his safety concerns.  See S.J. Mem. at 3 (Doc. No. 85-1); Azzara Aff. ¶ 21 ("Plaintiff has been repeatedly told that he could use the protective custody process.").

It is undisputed that Peters has not requested P.C. status. In Peters's words:

> I asked for out of state P.C. . . .  I chose not to P.C. in this prison because that [label] follows you forever and makes you look guilty but most of all [it's] only temporary until they relocate you to a different unit inside the same prison. . . .  I chose instead to go to the Residential Treatment Unit (RTU) and deal with the overwhelming stress and anxiety that I was under.

Peters Aff. ¶ 6 (Doc. No. 93-26).

In August 2015, plaintiff moved from SHU to the RTU, which he has described as more secure than a general population unit. Peters Dep. at 47-48 (Doc. No. 85-5, at 12).  While in the RTU, Peters met with Azzara, in circumstances Peters describes as discreet.  Peters Aff. ¶ 8 (Doc. No. 93-26); Azzara Aff. ¶ 20.

Peters remained in the RTU for seven months, through March 2016, when he was transferred to a general prison population unit.  Pl.'s Obj. Summ. J. (Doc. No. 93), at 2.  In April 2016, Peters "was ambushed and attacked by a known BOWW member."

5

Peters Aff. ¶ 11 (Doc. No. 93-26). The attacker punched Peters while other inmates stood by, before a guard put the attacker and Peters on the ground. Id. Peters's injuries included a cut on his lip and scratches and redness or swelling around his eyes. Id.; DOC Progress Notes, Matthew Peters, Apr. 18, 2016 (Doc. No. 85-10). Azzara avers, and Peters has not denied, that Peters rejected P.C. protection when it was offered to him after the April 2016 incident. See Azzara Aff. ¶ 23.

**Procedural History**

Peters filed this action in January 2015. In December 2015, he was granted leave to file an amended complaint asserting an Eighth Amendment claim against Azzara arising from the incident in the SHU rotunda. See Dec. 17, 2015 Order (Doc. No. 52). In June 2016, Peters was granted leave to add a claim concerning the April 2016 assault. See June 6, 2016 Order (Doc. No. 66).

Defendant moves for summary judgment (Doc. No. 85), arguing that: (1) the undisputed facts demonstrate that, under the applicable law, he did not act with deliberate indifference to a substantial risk of serious harm to Peters's safety; (2) Azzara is entitled to qualified immunity; and (3) Peters is not

6

entitled to damages.  Peters filed an objection (Doc. No. 93), defendant replied (Doc. No. 94), and Peters has filed a surreply (Doc. No. 95).

## **Discussion**

### I. **Failure to Protect Standard**

"Under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other prisoners.'"  Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834 (citation omitted).  "[A] prisoner need not wait to be assaulted to obtain relief for the infringement of this right."  Purvis v. Ponte, 929 F.2d 822, 825 (1st Cir. 1991).

> [A] prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety."

Lakin, 758 F.3d at 70 (quoting Farmer, 511 U.S. at 834).

7

A. <u>Substantial Risk of Serious Harm</u>

Azzara asserts that the comments attributed to him by Peters cannot be construed to have increased the risk of harm already faced by an inmate disassociating himself from a gang, and he argues that evidence of Peters's fear of harm is not sufficient to proceed to trial on an Eighth Amendment claim. See S.J. Mem. at 13 (Doc. No. 85-1); Azzara Aff. ¶¶ 7, 13, 14, 26 (Doc. No. 85-7). A claimed deprivation must be objectively serious for it to constitute a substantial risk of serious harm. See Lakin, 758 F.3d at 70. "An unreasonable risk of harm" for the purposes of stating an Eighth Amendment failure to protect claim, "is established where a plaintiff shows that there was a strong likelihood that violence would occur." Purvis, 929 F.2d at 825 (internal quotation marks and citation omitted).

A factfinder could conclude upon the record before this court that comments attributed to Azzara were spoken within earshot of other current gang members, that Azzara effectively labeled Peters as an informant, and that BOWW has retaliated violently against informants. See, e.g., Peters Dep. at 50-53, 69 (Doc. No. 85-5, at 13-14, 18); Peters Aff. ¶ 10 (Doc. No. 93-26). Peters's affidavit states that after his conversation with Azzara, Peters was "threatened constantly," and accused of

8

"selling other convicts down the river." Peters Aff. ¶¶ 5, 10 (Doc. No. 93-26). Additionally Peters has averred that NHSP Lt. Brown and other inmates told him, after the April 2016 assault, that "'it's not over and that it's going to get worse.'" Peters Aff. ¶¶ 10, 13 (Doc. No. 93-26); see also Peters Dep. at 81-84 (Doc. No. 85-5, at 21-22). Other inmate affidavits in the record describe the extra risk of being "green-lighted" by BOWW (i.e., targeted for especially violent or repeated public assaults), a consequence informants may face, in addition to the risk of being "beaten out" (assaulted one or more times) faced by those who simply leave BOWW without debriefing. See, e.g., Jan. 3, 2017 Inmate Aff. (Doc. No. 93-18, at 1-2); 2016 Inmate Aff. (Doc. No. 93-25). Because the record reveals a genuine dispute of material fact as to whether Azzara subjected Peters to a strong likelihood of violence, manifesting a substantial risk of serious harm, the district judge should deny the motion for summary judgment on that issue.

B. Deliberate Indifference and Reasonable Steps

Azzara argues that there is insufficient evidence in the record to generate a jury question on the element of deliberate indifference. S.J. Mem. at 11 (Doc. No. 85-1). Deliberate indifference "requires 'something less than acts or omissions

9

for the very purpose of causing harm or with knowledge that harm will result' but 'something more than mere negligence.'" Mosher v. Nelson, 589 F.3d 488, 494 (1st Cir. 2009). Deliberate indifference requires evidence: "(1) that 'the official . . . [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],' and (2) that he dr[e]w that inference." Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (quoting Farmer, 511 U.S. at 837). Prison officials who respond "reasonably to a known risk" cannot be deemed to have been deliberately "indifferent." Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002).

Azzara has averred that he is not aware of any particular harm Peters would have faced as a result of the brief conversation they had in SHU, and that he was not aware of any particularized threat faced by Peters. Azzara Aff. ¶¶ 7, 14, 19, 26 (Doc. No. 85-7). A reasonable factfinder could conclude otherwise regarding Azzara's knowledge and awareness, from evidence in the record, including evidence that: Azzara knew of Peters's involvement in BOWW and his stated intent to leave the gang; Azzara had extensive experience working with prisoners, both in his current capacity as a DOC investigator and in his prior capacity as a prison guard; BOWW has a reputation as a

10

violent, retaliatory prison gang; Azzara knew that inmates carefully watch what happens on their unit; and Azzara generally speaks to as many inmates as possible, in view of other inmates, when he arrives in SHU, in an effort to normalize his contacts with particular inmates. See, e.g., Peters Aff. ¶ 3 (Doc. No. 93-26); Azzara Aff. ¶¶ 1, 3, 5, 6 (Doc. No. 85-7). See generally Miranda-Rivera, 813 F.3d at 74 ("A factfinder can conclude that a government official was aware of a substantial risk of serious harm based on the fact that the risk was obvious." (citing Farmer, 511 U.S. at 837)).

In sum, the record before this court reveals that there are genuine disputes of material fact as to whether Azzara's comments were made with deliberate indifference to Peters's safety, in light of Azzara's knowledge of BOWW and experience, the words he may have used, the place and time where they spoke, the presence and reaction of other inmates and gang members who overheard, and other evidence of the obvious nature of the risk. Such evidence also raises a triable issue as to whether reasonable steps were taken to alleviate the risks to Peters in SHU, or afterwards. Accordingly, the district judge should deny Azzara's motion for summary judgment on those liability issues.

## II. **Qualified Immunity**

A government official in a prisoner civil rights action "'is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014) (citation omitted); see also Mullenix v. Luna, 136 S. Ct. 305, 308 (2016). Defendant has raised the issue of qualified immunity, specifically arguing that Peters has not shown sufficient evidence to make out a violation of a constitutional right. Reply ¶ 12 (Doc. No. 94), at 4. As explained above, Peters has demonstrated that there is a triable issue as to whether Azzara violated his Eighth Amendment rights.

Nor is Azzara entitled in this case to summary judgment on the "clearly established" prong of the qualified immunity standard. The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 9 (1st Cir. 2013) (emphasis, citations, and internal quotation marks omitted); see also White v. Pauly, 137 S. Ct. 548, 552 (2017) ("[T]he clearly established

12

law must be 'particularized' to the facts of the case." (citation omitted)).  In other words, "controlling authority" in the relevant jurisdiction, or -- in the absence of controlling law -- a "robust consensus of persuasive authority" existed, making the conduct undebatably illegal at the time of the alleged violation.  Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 214-15 (1st Cir. 2015) (citations and internal quotation marks omitted).  The standard does not require a case on point, but does require "a case where an officer acting under similar circumstances as [the defendant] was held to have violated" the pertinent federal constitutional amendment.  White, 137 S. Ct. at 552.  The burden is on the plaintiff to show the inapplicability of the defense.  See Rivera-Corraliza, 794 F.3d at 215.

Although neither the Supreme Court nor the First Circuit has considered the same issues in a closely-analogous case, involving a violent gang and an informant, the court in Giroux v. Somerset Cty., 178 F.3d 28 (1st Cir. 1999), concluded that summary judgment for defendants should be vacated, where the defendant jailers had taken actions they apparently knew tarred plaintiff as an informant, and then put the plaintiff in a holding cell with the inmate who had threatened him.  See id. at

29-30. Appellate courts in other jurisdictions have found liability, or an absence of qualified immunity, upon evidence that the corrections officer at issue knowingly labeled plaintiff as an informant with knowledge of the risk of a violent response. See Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008) (officer who falsely called inmate "'snitch'" or "'rat'" was not entitled to qualified immunity); Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001) (labeling "inmate a snitch . . . constitutes deliberate indifference to the safety of that inmate"); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (guards who told other inmates that plaintiff was "a 'snitch'" may be liable for failing to protect inmate from violence while in custody); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (same). A review of the pertinent cases from other jurisdictions reveals that the requisite "robust consensus of persuasive authority," Rivera-Corraliza, 794 F.3d at 214-15 (internal quotation marks and citations omitted), existed prior to 2015. It would have been clear to a reasonable officer in Azzara's circumstances in 2015 that -- in the absence of reasonable steps taken to alleviate the risk -- knowingly causing members of a violent prison gang to overhear that the officer called an inmate an informant against the gang could

violate that inmate's Eighth Amendment rights.[3]  Accordingly, the district judge should deny Azzara's motion for summary judgment on the qualified immunity defense.

### III. **Damages**

Citing the Prison Litigation Reform Act ("PLRA"), defendant moves for summary judgment on plaintiff's claims for punitive and compensatory damages, arguing that Peters has not shown that he suffered physical injuries.  S.J. Mem. at 14 (Doc. No. 85-1).  The PLRA provides, in pertinent part, as follows:  "No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

---

[3]The result in Petaway v. Duarte, No. CA 11-497-ML, 2012 U.S. Dist. LEXIS 71078, 2012 WL 1883506 (D.R.I. May 22, 2012), does not undermine the conclusion that the pertinent law in 2015 was clearly established.  Petaway is a case from the District of Rhode Island that apparently did not involve allegations of a substantial risk of violent gang retribution, or any physical injuries.  The Petaway plaintiff alleged that a guard had labeled him a snitch in speaking with another inmate, and prison officials had then responded to plaintiff's concerns by placing him in single recreation status.  The court granted the motion to dismiss the Eighth Amendment failure to protect claim against the guard, upon concluding that the plaintiff had not stated facts indicating he was exposed to any substantial risk of serious harm, where the placement of plaintiff in single recreation status suggested that defendants took reasonable action to alleviate the risks.  See id., 2012 U.S. Dist. LEXIS 71078, at *13-*18, 2012 WL 1883506, at *4-*6.

15

A.  Punitive Damages

Defendant's argument about the PLRA's preclusion of claims for punitive damages is unavailing as a matter of law.  The First Circuit in Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011), essentially construed the PLRA as not barring federal civil rights claims for punitive or nominal damages even if physical injuries are not alleged.  See id. (plaintiff's "requests for nominal and punitive damages are enough to keep his claims alive," notwithstanding lack of physical injuries); Lopez v. Ortiz, No. 13-1166 (DRD), 2015 U.S. Dist. LEXIS 43643, at *28, 2015 WL 1470566, at *11 (D.P.R. Mar. 31, 2015) (PLRA does not bar § 1983 claims for punitive damages based on constitutional claims); Boulanger v. U.S. Bureau of Prisons, No. 1:06-CV-308-WES, 2009 U.S. Dist. LEXIS 124341, at *50-*51, 2009 WL 1146430, at *15 (D.N.H. Mar. 25, 2009) (PLRA does not bar claims for punitive and nominal damages), R&R approved, No. 1:06-CV-308-WES, 2009 WL 1146430, at *1; 2009 U.S. Dist. LEXIS 36330 (D.N.H. Apr. 24, 2009).  Accordingly, the district judge should deny the summary judgment motion on punitive damages.

B.  Physical Injuries and Compensatory Damages

Construed liberally, plaintiff's response to defendant's PLRA argument regarding compensatory damages is that the

injuries he suffered following the April 2016 assault satisfy the physical injury requirement. Peters does not argue that he may be awarded compensatory damages for emotional injuries without proof of physical injury.[4]

Defendant maintains that Peters's deposition testimony "forecloses [Azzara's] liability," in that Peters testified that he told BOWW members in August 2015 that he would not rejoin BOWW, and after that encounter his assailant and other BOWW members started to plan how to attack him. S.J. Mem. at 14 (Doc. No. 85-1) (characterizing Peters's deposition testimony). According to defendant's summary judgment memorandum,

> Plaintiff's allegations illustrate that his conversation with Defendant Azzara was not what brought on any risk of injury. The risk is associated with his refusal to return to BOWW and his desire to allegedly turn his life around by leaving the STG.

---

[4]The consensus in the federal appellate courts that have considered the issue is that the PLRA, 42 U.S.C. § 1997e(e), bars claims for compensatory damages for emotional injuries absent evidence of physical injuries. See Lopez v. Ortiz, No. 13-1166 (DRD), 2015 U.S. Dist. LEXIS 43643, at *28 & n.10, 2015 WL 1470566, at *9 & n.10 (D.P.R. Mar. 31, 2015) (citing cases from Third, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits); see also Boulanger v. U.S. Bureau of Prisons, No. 1:06-CV-308-WES, 2009 U.S. Dist. LEXIS 124341, at *50-*51, 2009 WL 1146430, at *15 (D.N.H. Mar. 25, 2009), R&R approved, No. 1:06-CV-308-WES, 2009 WL 1146430, at *1; 2009 U.S. Dist. LEXIS 36330 (D.N.H. Apr. 24, 2009). This court concurs with the conclusion that § 1997e(e) bars claims for compensatory damages for emotional injuries in the absence of proof of physical injuries.

Id.

Common law tort principles of causation and proximate cause apply to claims for compensatory damages under 42 U.S.C. § 1983. See Burke v. McDonald, 572 F.3d 51, 60 (1st Cir. 2009) ("§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions'" (citations omitted)). "Proper analysis of this proximate cause question require[s] consideration of the 'foreseeability or the scope of the risk created by the predicate conduct,'" and the court's conclusion "that there was 'some direct relation between the injury asserted and the injurious conduct alleged.'" County of Los Angeles v. Mendez, 137 S. Ct. 1539, 1548-49 (2017) (citations omitted). "A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." Paroline v. United States, 134 S. Ct. 1710, 1719 (2014).

The causal link between Azzara's alleged failure to protect Peters from a risk of gang violence and the injuries suffered by Peters as a result of gang violence, shortly after his transfer from the RTU to the general prison population, is not too

18

attenuated to be submitted to a jury, in light of all the evidence before this court. As the question of proximate cause is not properly resolved in Azzara's favor as a matter of law at this time, the district judge should deny defendant's motion for summary judgment, to the extent it seeks rulings as a matter of law that Peters is not entitled to compensatory damages, that there is no evidence of physical injury caused by Azzara, and that Peters's deposition testimony foreclosed the possibility that Azzara may be held liable for injuries.

**IV. Case Management Issues**

The court notes that the deposition testimony includes a settlement demand. See Peters Dep. at 122 (Doc. No. 85-5, at 31). It is not clear from the record whether and to what extent defendant has considered that demand in good faith. The parties are expected to use their best efforts to resolve this case, in light of this Report and Recommendation ("R&R"), and to avail themselves of mediation as appropriate. Upon approving this R&R, the district judge should also direct the clerk's office to schedule a case management conference, for the purposes of addressing, among other things, whether plaintiff may wish to renew his motion for appointment of counsel, and to set new trial dates.

## Conclusion

For the reasons described above, defendant's motion for summary judgment (Doc. No. 85) should be denied, and the district judge should direct the clerk's office to schedule a case management conference. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 4, 2017

cc: Matthew W. Peters, pro se
　　Lynmarie C. Cusack, Esq.
　　Elizabeth A. Lahey, Esq.